644 P.2d 902

John KROMKO; George Johnston; and Kathleen Franzi, Petitioners/Appellants,

v.

The STATE of Arizona; Arizona Secretary of State; and Clerk of the Pima County Board of Supervisors, Respondents/Appellees.

No. 2 CA–CIV 3875.

Court of Appeals of Arizona, Division 2.

Sept. 14, 1981.

Review Granted Dec. 8, 1981.

O'Dowd & Burke by Bruce A. Burke, Tucson, for petitioners/appellants.

Robert K. Corbin, Atty. Gen. by Anthony B. Ching, Sol. Gen., and Toni S. McClory, Asst. Atty. Gen., Phoenix, for respondents/appellees.

## OPINION

HOWARD, Judge.

The issue to be decided in this appeal is whether A.R.S. § 16–341(C), which provides that a nomination petition for an independent candidate for the general election can be signed only by voters who have not signed a nomination petition of a candidate for the office to be voted for at the last primary election and who have not voted at the primary election, is constitutional? We hold that it is not and reverse.

Each of the named petitioners is a qualified elector in Pima County and each was qualified to vote in Arizona's primary election on September 9, 1980. Petitioners John Kromko and George Johnston are members of the Democratic Party and petitioner Kathleen Franzi is a member of the Libertarian Party.

All the petitioners, except Franzi, wanted to sign nomination petitions for the independent presidential candidate, John Anderson, and did not want to vote for their respective presidential electors in the pri-

mary election. Each of the petitioners also desired to sign other general election nomination petitions for certain county or local candidates. The Libertarian Party had qualified to be on the ballot for state and federal officers, but not for county officers.[1] The Libertarian ballot, however, did not contain candidate choices for certain state offices, for example, state mining inspector.

One week prior to the general election scheduled for September 9, 1980, petitioners filed a special action in the superior court requesting the following relief: (1) A declaration that A.R.S. § 16–341(C) was unconstitutional; (2) an order requiring appellees to accept and count as valid signatures, petitioners' signatures on any nomination petition for any office for which they did not vote at the primary election; and (3) an injunction preventing the appellees from enforcing A.R.S. § 16–341(C).

The trial court found the statute constitutional and refused to grant appellants' relief.

Appellants present the following questions for review:

"I. Does A.R.S. § 16–341(C) violate the equal protection provisions of the Fourteenth Amendment to the United States Constitution by disqualifying a voter who participated in a primary election from thereafter signing the petition of an independent candidate seeking nomination to an office for which the voter had a choice of candidates in the primary election?

II. Does A.R.S. § 16–341(C) violate the equal protection provisions of the Fourteenth Amendment to the United States Constitution by disqualifying a voter who participated in a primary election from thereafter signing the petition of an independent candidate seeking nomination to an office for which the

voter had no choice of candidates in the primary election?"

In Arizona there are two methods of nominating candidates for a general election. First, candidates for political parties which are entitled to a representation as a political party on the official ballot for state officers or for officers of a county or local subdivision may be nominated by primary election only. A.R.S. § 16–301. If no candidate is nominated in the primary election for a particular office, then no candidate of that party may appear on the general election ballot for that office. There is no "crossover" voting in the primary. A.R.S. § 16–467.

The second method is by the filing of a nomination petition after the primary election. A.R.S. § 16–341. A candidate can be nominated for the general election otherwise than by primary election by the filing of a nomination petition containing the signatures of at least one per cent of the qualified electors of the state, county, or subdivision for which the candidate is nominated. A.R.S. § 16–341(E). However, to be nominated in this manner, the candidate must not have been defeated in the immediately preceding primary election. A.R.S. § 16–341(A).

Although the 1980 election is past and this court may not grant retrospective relief that would affect its outcome, this case is not moot because the question which is raised is one capable of repetition, yet evading review. See *Rosario v. Rockefeller*, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973); *Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974).

Prior to 1979, the statute dealing with nomination petitions for the general election for independent candidates, A.R.S. § 16–601(C), stated that the petition "... shall be signed only by voters who have not

---

1. To be on the ballot for state and federal offices, a new political party must file a petition signed by a number of qualified electors equal to not less than 2% of the total votes cast for governor or presidential electors at the last preceding general election. A.R.S. § 16–801. To be on the county or municipal ballot, the signature requirement is 3% of the total votes cast for county attorney or mayor at the last city election and these signatures must be of qualified electors in not less than one-fourth of the election precincts of the county, city or town. A.R.S. § 16–802.

signed the nomination petitions of a candidate for the office to be voted for at the last primary election, *and who have not voted for any candidate for that office at the primary election.*" (Emphasis added) A.R.S. § 16–341(C) was enacted in 1979 and A.R.S. § 16–601(C) was repealed. A.R.S. § 16–341(C) states that the petition "... shall be signed only by voters who have not signed the nomination petitions of a candidate for the office to be voted for at the last primary election *and who have not voted at the primary election.*" (Emphasis added)

▮ We start with the premise that where a state endeavors to regulate the people's right to vote effectively, the regulation may only be justified when it serves to promote a compelling state interest. *Storer v. Brown,* supra. There is no doubt that a state may confine each voter to one vote in a primary election, and that to maintain the integrity of the nominating process the state is warranted in confining the voter to participate in but one of two alternative procedures, the partisan or the non-partisan process, for nominating candidates for the general election. *American Party of Texas v. White,* 415 U.S. 767, 94 S.Ct. 1296, 39 L.Ed.2d 744 (1974); *Storer v. Brown,* supra. As the Court states in *American Party of Texas v. White,* supra:

"... Appellants attack this restriction, but, as such, it is nothing more than a prohibition against any elector's casting more than one vote in the process of nominating candidates for a particular office. Electors may vote in only one party primary; and it is not apparent to us why the new or smaller party seeking voter support should be entitled to get signatures of those who have already voted in another nominating primary and have already demonstrated their preference for other candidates *for the same office the petitioning party seeks to*

*fill.*"[2] 415 U.S. at 785, 94 S.Ct. at 1308 (Emphasis added)

A close reading of *American Party of Texas v. White,* supra, and *Storer v. Brown,* supra, indicates that the United States Supreme Court, in upholding the election laws of both Texas and California, was referring to situations in which the voter in the primary election was able to vote for a candidate for the office for which he now wished to sign a nomination petition, even though he may not have exercised that vote.

▮ Because of the simple fact that the ballot was secret under the now repealed A.R.S. § 16–601(C), it was impossible for a person scrutinizing the nomination petition for an independent candidate to tell whether or not the person signing the petition had voted for the office at the primary election. However, when the legislature repealed A.R.S. § 16–601(C) and enacted § 16–341(C) it went too far in disqualifying a person from signing the nomination petition of an independent candidate if he voted as the last preceding primary, regardless of whether the party had a slated candidate for the office for which he now seeks to sign a nomination petition. To the extent that A.R.S. § 16–341(C) prohibits such signatures, it violates the equal protection clause of the Fourteenth Amendment to the United States Constitution because there is no compelling state interest in prohibiting persons from signing nomination petitions for independent candidates when their party had no candidate for such office in the primary election.

The decision of the trial court is reversed with directions to enter a declaratory judgment declaring (1) that A.R.S. § 16–341(C) is constitutional to the extent that it prohibits persons who voted in the next preceding primary election from signing nomination petitions for a candidate when the person's party had a candidate[3] for that office in the next preceding primary election and

---

2. In Texas an elector is permitted to sign the nomination petition of an independent candidate even if the elector voted in the primary election, if his party did not nominate any candidate for that office. Texas Election Code, art. 13.51 (1967).

3. This would also include the write-in candidate who files a nomination paper pursuant to A.R.S. § 16–312.

(2) that A.R.S. § 16–341(C) is unconstitutional to the extent that it prohibits persons who voted in the next preceding primary election from signing nomination petitions for a candidate when the person's party did not have a candidate for that office at the next preceding primary election.

HATHAWAY, C. J., and JACK T. ARNOLD, Superior Court Judge, concur.

NOTE: Judge BEN C. BIRDSALL having recused himself in this matter, Judge JACK T. ARNOLD was called to sit in his stead and participate in the determination of this decision.